JODI LINKER
Federal Public Defender
Northern District of California
JOYCE LEAVITT
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Work Telephone:    (415) 517-4879
Email:        Joyce_Leavitt@fd.org

Counsel for Defendant GAULDING

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEVAR GAULDING,<br><br>Defendant. | Case No.: CR 22–00460 HSG<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date:         April 9, 2025<br>Time:         2:00 p.m. |

**I.     INTRODUCTION**

Levar Gaulding will be sentenced by this Court on April 9, 2025, after having pled guilty to possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).[1] The probation officer and government both recommend to the Court that Mr. Gaulding be sentenced to a time-served sentence based upon his post-offense rehabilitation, as demonstrated by Mr. Gaulding's successful completion of the Conviction Alternative Program (CAP).' *See*

---

[1] Mr. Gaulding initially pled guilty to a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) which carried a mandatory minimum of 5 years imprisonment. However, in accordance with his plea agreement, once Mr. Gaulding completed the Conviction Alternative Program, the government superseded with the charges listed above and Mr. Gaulding pled guilty to the superseding offense, such that the mandatory minimum sentence is no longer applicable.

Presentence Investigation Report disclosed March 26, 2025 ("PSR"), Sentencing Recommendation at p. 1-3; Plea Agreement at ¶15. Mr. Gaulding also asks the Court to sentence him to a time-served sentence, to be followed by four years of supervised release consistent with the parties' agreement.

Much has changed for Mr. Gaulding since he first appeared in federal court more than two years ago in December 2022. At his initial appearance on December 16, 2022, Mr. Gaulding was notified of the mandatory minimum five-year prison sentence alleged in the indictment, and that the advisory guideline range he faced was triple that time because Mr. Gaulding's prior criminal convictions qualified him as a career offender. Mr. Gaulding, who was 45 years old at the time of his initial appearance, had been struggling with his addiction to methamphetamine for more than half his life, using it daily, albeit with intermittent periods of sobriety, for 24 years. PSR at ¶ 97 That addiction affected every aspect of his life. Thankfully, Mr. Gaulding has been able to move towards the next chapter of his life, in large part because of the assistance he has received from this Court and the CAP team.

Mr. Gaulding was released to a 90-day residential treatment program called J. Cole Recovery Homes on March 17, 2023. *Id*. at ¶¶ 4, 5, 99. Mr. Gaulding successfully completed the program in June 2023. *Id*. at ¶ 5. After providing additional documentation regarding Mr. Gaulding's criminal and personal history to the prosecutor, the government, to its great credit, agreed to allow Mr. Gaulding to plead guilty pursuant to a plea agreement that included participation in CAP, and dismissal of the mandatory minimum charge should he successfully complete it. Plea Agreement at ¶ 8. On March 3, 2025, Mr. Gaulding officially completed CAP, and his graduation ceremony is scheduled for May 19, 2025. *Id*. at ¶ 5. Mr. Gaulding's post-offense rehabilitation as demonstrated through his successful completion of CAP warrants a time-served sentence. He is extremely grateful to the government for allowing him the chance to finally put his life in order. He files this brief sentencing memorandum in support of his request for a time-served sentence, followed by four years of supervision.

II.     **STATEMENT OF FACTS**

    A.     **Personal Background**

Levar Gaulding grew up living with his mother, grandmother, an uncle and some aunts in a

chaotic home environment in which he was exposed to drug use, mental health issues, and violence.[2] PSR at ¶ 87. Mr. Gaulding's father and grandfather were both alcoholics, and his mother was a drug addict who spent 19 months in residential drug treatment when Mr. Gaulding was 14 years old. *Id*. Mr. Gaulding's surroundings outside his home were also chaotic and detrimental to him. His neighborhood was replete with gang activity, violence, drug use and criminal activity which he witnessed on a daily basis. *Id*. at ¶ 89. Moreover, Mr. Gaulding was also a victim of the violence which racked his community, having been shot twice. *Id*. at ¶ 90. He was 18 years old when he was shot the first time in the abdomen, which required surgery and part of his intestines removed. *Id*. at ¶ 94. Against this backdrop, it is not surprising that Mr. Gaulding started using drugs by the age of 21 as an escape. He quickly became dependent on crystal methamphetamine and struggled with this addiction for the next 24 years. *Id*. at ¶ 97. Although Mr. Gaulding sincerely wanted to get clean and participated in a number of treatment programs over the years, *id*. at ¶ 98, he was unable to maintain lasting sobriety and his relapses quickly brought him back into the criminal justice system followed by imprisonment. *Id*. at ¶¶ 30-56, 97–100.

Not only has Mr. Gaulding's addiction destroyed his ability to live a crime-free and stable life, but also Mr. Gaulding's three children have been negatively affected by his addiction. His oldest daughter, Chasadie, who is 26 years old, was raised primarily by her mother because Mr. Gaulding's spiral of addiction and imprisonment kept him in and out of her life.[3] PSR at ¶ 92. The mother of Mr. Gaulding's second child was also addicted to drugs and recently killed by a violent partner while Mr. Gaulding has been on release, leaving their 9-year old daughter to be raised by her maternal grandmother. *Id*. Mr. Gaulding's youngest child who is currently 6 years old, was born with drugs in his system and taken by foster care because his mother, who was Mr. Gaulding's second wife,

---

[2] Mr. Gaulding told the probation officer that his mother "whooped him with a belt" for perceived misbehavior, *id*. at ¶ 87, however undesigned counsel obtained child protective services (CPS) records which reflect that Mr. Gaulding's mother was a crack addict who threatened him with a crowbar, a knife, a needle and syringe filled with an unknown substance, hit him with a belt, used drugs in front of him, and tried to commit suicide in front of him by trying to stab herself with a knife.

[3] Chasadie signed as a surety to secure Mr. Gaulding's release because no one else was willing to take the risk that Mr. Gaulding would relapse, the bond would be revoked, and the surety would face financial hardship.

DEFENDANT'S SENTENCING MEMO
*GAULDING*, CR 22–00460 HSG

3

1    Shannon Gaulding, was addicted to methamphetamine. *Id*. at ¶¶ 91, 92. Shannon's addiction led to
2    heart failure and she died suddenly in 2019. *Id*. That event led to Mr. Gaulding's last relapse in 2019.
3    His son was then formally adopted by a family able to provide him with stability. *Id*.
4         As government counsel was considering whether to agree to Mr. Gaulding's request to
5    participate in CAP, they asked him to expand on how CAP would affect the intergenerational issues
6    which have plagued Mr. Gaulding's family and break the cycle of addiction. The answer was clear.
7    Mr. Gaulding's upbringing was marred and destabilized by his parents' addiction, violence and
8    chaos. Not surprisingly, Mr. Gaulding's addiction, in turn, destabilized the lives of his children. The
9    mothers of Mr. Gaulding's two younger children both were addicted to drugs, and each mother died
10   an untimely death. PSR at ¶¶ 91, 92. By allowing Mr. Gaulding to remain out of custody and
11   participate in CAP, he has continued working on his sobriety, addressing his underlying trauma, and
12   rebuilding his relationships with his children. This work will serve to help Mr. Gaulding halt the
13   cycle of intergenerational trauma in his family. He is now able to provide the stability in his
14   children's lives that was missing in his own life.
15        Mr. Gaulding is grateful beyond words to the government for giving him the chance to make
16   significant, lasting changes in his life with the assistance of CAP, for himself as well as his children.
17   Over the past year, Mr. Gaulding has taken steps to strengthen these bonds. He sees his older
18   daughter and granddaughter every other day, and helps her financially. *Id*. at ¶ 92. While Mr.
19   Gaulding was still participating in residential drug treatment in 2023, he learned that the mother of
20   his second daughter had been murdered and he met with the grandmother to ask how he could assist.
21   *Id*. Since then and for the past year, Mr. Gaulding has played a large role in his 9-year-old daughter's
22   life. *Id*. Mr. Gaulding and his daughter text each other every morning and every night. *Id*.
23   Undersigned counsel spoke with the maternal grandmother who spoke about the strong bond between
24   father and daughter and how it has helped Mr. Gaulding's daughter to heal after losing her mother to
25   violence. Finally, Mr. Gaulding is aware that he can rebuild a relationship with his 6-year-old son
26   who was adopted and is working towards that goal, with the approval of his son's adopted mother.
27   Mr. Gaulding continues to work on his sobriety so that he can be a consistent and reliable presence in
28   his youngest child's life.

### B. Post-Offense Rehabilitation

Mr. Gaulding's post offense rehabilitation has been extensive and includes completion of a 90-day residential treatment program called J. Cole Recovery Homes, followed by relocation to a transitional living program where he continues to live today. *See* Supervision States Report; Conviction Alternatives Program (CAP) dated March 12, 2025 ("Supervision Report") at p.1. While in CAP, Mr. Gaulding also participated in weekly individual counseling, weekly Courage to Change sessions, weekly self-help group meetings, community service, and weekly meetings at the transitional living program home that focus on 12 step recovery and weekly drug testing. *Id*. Mr. Gaulding is motivated to continue to serve his community. Mr. Gaulding would like to become a chef and he is scheduled to go to a three-month culinary arts education program through the Salvation Army which starts in July 2025. PSR at ¶ 103. Because the culinary arts program is through the Salvation Army, Mr. Gaulding will still have the same support and commitment to sobriety that Salvation Army has provided him to date. Mr. Gaulding's post-offense rehabilitation also includes the relationships he has rebuilt with his family as discussed above.

## III. DISCUSSION

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The sentence recommended is just one factor for district courts to consider, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). This Court has the discretion to sentence Mr. Gaulding to a time-served sentence pursuant to the sentencing goals set out in 18 U.S.C. § 3553(a) for the reasons discussed below.

### A. Post Offense Rehabilitation

This Court can consider "post-crime maturation and self-rehabilitation" at sentencing. *See United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008). The Supreme Court has "made clear

that post-sentencing or post-offense rehabilitation—particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct—[is] a critical factor to consider in the imposition of a sentence." *United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013) (citing *Pepper v. United States*, 562 U.S. 476, 491-93 (2011) and *Gall*, 552 U.S. at 59 (emphasis added)). Such rehabilitation is "the most up-to-date picture" of a defendant's history and characteristics, which in turn sheds light on whether a defendant will be deterred from committing another crime. *Pepper*, 562 U.S. at 492 (quoting 18 U.S.C. § 3553(a)(1)).

Mr. Gaulding's post-offense rehabilitation is described above, and it is significant. He successfully completed CAP, which is a very difficult and demanding program. He has remained crime free. He is a committed father and community member. His post-offense rehabilitation has helped him forge a solid path forward and warrants a time-served sentence.

### B. Mr. Gaulding' history and characteristics support the requested sentence

Mr. Gaulding's history and characteristics also should be considered in determining the appropriate sentence. "Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545 (1987).

Counsel will not repeat what is set out above regarding Mr. Gaulding's history and characteristics. However, the trauma he suffered as a child, his addiction to drugs and the remarkable steps he has taken to change his trajectory and become a positive influence in his community and for his family, are part of his history and characteristics that warrant a time-served sentence. Mr. Gaulding has spent two and a half years participating in programming and gaining the tools necessary to remain successful and drug free. Treatment of trauma and addiction is far more effective in reducing recidivism in lieu of imprisonment and that is certainly what has been demonstrated in this case. This Court is very familiar with Mr. Gaulding and undoubtedly has seen not only the changes Mr. Gaulding has made in his own life but in the lives of his children as well. For all these reasons, a non-custodial sentence of time served is warranted.

**C.     The Need to Avoid Unwarranted Disparities**

In fashioning an appropriate sentence in this case, the Court must avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 USC § 3553(a)(6). *See also United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009). In this case, Mr. Gaulding pled guilty to possession with the intent to distribute methamphetamine and was accepted into CAP which he has completed. This Court is aware of the other individuals who have been sentenced to time served after completing CAP. Imposing a sentence of time served in this case would avoid unwarranted disparities among similarly situated defendants.

**IV.   CONCLUSION**

For the reasons described above, Mr. Gaulding requests that the Court sentence him to a sentence of time served, followed by four years of supervised release.

Dated:     April 7, 2025                                   Respectfully submitted,

                                                           JODI LINKER
                                                           Federal Public Defender
                                                           Northern District of California

                                                                   /S
                                                           JOYCE LEAVITT
                                                           Assistant Federal Public Defender